## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **METROPOLITAN MERCHANT CAPITAL, INC.**<br>70 East 55th Street, 19th Floor<br>New York, NY 10022 | : <br> : <br> : <br> : | |
| Plaintiff, | : | Civil Action No. _____ |
| | : | |
| v. | : | |
| | : | |
| **RAPID CAPITAL FINANCE, LLC**<br>11900 Biscayne Blvd., Suite 201<br>Miami, FL 33181 | : <br> : <br> : | |
| | : | |
| **NORTH AMERICAN BANCARD HOLDINGS, INC.**<br>40600 Ann Arbor Rd E Ste 201<br>Plymouth, MI 48170 | : <br> : <br> : <br> : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Metropolitan Merchant Capital, Inc., in support of its Complaint against Defendants Rapid Capital Finance, LLC and North American Bancard Holdings, Inc., states the following:

### PARTIES

1.      Plaintiff Metropolitan Merchant Capital, Inc. ("MetMC") is a Delaware corporation, with its principal place of business in Colorado.

2.      Defendant North American Bancard Holdings, Inc. ("NAB") is a Michigan corporation, with its principal place of business in Michigan. On information and belief, NAB regularly conducts business in the State of New York. NAB's registered office address is set forth above. NAB maintains its headquarters at 250 Stephenson Highway, Troy, MI 48083.

3.     Defendant Rapid Capital Finance, LLC d/b/a Rapid Capital Funding ("Rapid") is a Delaware limited liability company. On information and belief, the members of Rapid are domiciled in the State of Michigan and the State of Florida. On further information and belief, Rapid maintains business offices in this District.  NAB is the parent company of Rapid.

<h3 style="text-align:center">JURISDICTION AND VENUE</h3>

4.     The Southern District of New York possesses subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000 and there is complete diversity of citizenship.

5.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to this claim occurred in this District and because at least one Defendant (Rapid) resides in this District for venue purposes and the other Defendant is considered a resident of the state of New York pursuant to 28 U.S.C. § 1391(c)(2).

<h3 style="text-align:center">THE FACTS</h3>

6.     Rapid is engaged in the business of purchasing future credit card, debit card, bankcard and/or other charge card receivables from merchants, and purchasing the proceeds of future sales by merchants, whether paid in cash, check, ACH, credit card, debit card, bankcard, charge card and/or other means.

7.     On October 5, 2015, MetMC and Rapid entered into a Participation Agreement, whereby Rapid would sell, and MetMC would purchase, a participation interest in certain Merchant Advances made by Rapid. (*See* Participation Agreement, a true and correct copy of which is attached hereto as Exhibit "A".)

8.     Pursuant to the terms of the Participation Agreement, any Participation Interest purchased by MetMC represented "an undivided ownership interest in [Rapid's] right, title and

2

interest in, to and under the applicable Available Merchant Advances equal to the Participation Percentage purchased..." Id., §2(d) and Schedule 3.

9.      Pursuant to the terms of the Participation Agreement, if the returns on the financed amounts did not equal an IRR of 18%, MetMC was entitled to have the shortfall funded by Rapid.

10.      The Participation Agreement includes a "Make-Whole Obligation," which requires that:

> If payments to [MetMC] in respect of a Vintage Pool that has aged more than [20] months have not provided [MetMC] with an IRR on such Vintage Pool of at least 18% (the "IRR Hurdle"), [Rapid] will pay [MetMC] an amount that, when added to all such payments, provides [MetMC] with an IRR on such Vintage Pool equal to the IRR Hurdle (the "Make-Whole Amount").

Ex. A, Schedule 3.

11.      The Participation Agreement was originally funded on or about October 7, 2015, with the first Vintage Pool period ending on January 4, 2016.

12.      MetMC funded approximately Ten Million Seven Hundred Thousand Nine Hundred Thirty-Four Dollars and Forty-Four Cents ($10,700,937.44) during the first Vintage Pool.

13.  The First Vintage Pool's "Make Whole" payment is due on or about July 15, 2017, as indicated in Schedule 3 of the Participation Agreement. The amount calculated due under the Participation Agreement is Eight Hundred Eighteen Thousand Eight Hundred One Dollars and Ninety-five Cents ($818,801.95).

14.  The remaining Vintage Pools' "Make Whole" payments have been calculated to be Eight Hundred and Eleven Thousand Six Hundred Seventeen Dollars and Ninety-nine Cents ($811,617.99).

3

Case 1:17-cv-03397-PKC   Document 1   Filed 05/08/17   Page 4 of 13

15.     As of this date, Rapid has already communicated to MetMC that it will not be making any Make Whole payments pursuant to the terms of the Participation Agreement.

16.     As set forth more fully below, in addition to the explicit recognition that no Make Whole payments will be made to MetMC, Rapid further failed to provide adequate assurances that such payments would or could be made at the times they were scheduled to be paid.

17.     Rapid's communications and failure to provide adequate assurances that its commitments under the Participation Agreement will be met operate as an anticipatory breach of the Participation Agreement's terms.

18.     As of the filing of this Complaint, the total estimated amount of the Make-Whole payments calculated under the Participation Agreement exceeds One Million Six Hundred Thousand Dollars ($1,600,000.00).

19.     On information and belief, Rapid's failure to pay the "Make Whole" amount is a result of Rapid's financial condition—wherein Rapid does not have sufficient assets to pay its current liabilities and is therefore effectively insolvent.

20.     On information and belief, a significant factor in Rapid's insolvency is Rapid's distribution of funds to its majority owner, NAB. On further information and belief, NAB has in fact authorized and required Rapid to make preferential payments to NAB to the detriment of Rapid's other creditors and owners, including MetMC.

21.     These distributions are in direct violation of the terms of the Participation Agreement which states that the percentage interests in "Participated Merchant Advances shall be ratably concurrent, without preference or priority one over another." Participation Agreement at section 2(e).

4

22.     On information and belief, these distributions were made with the knowledge that Rapid was insolvent at the time the distributions to NAB were made and authorized. On further information and belief, Rapid and NAB made these distributions and authorizations at a time that both entities had knowledge of the terms of the Participation Agreement—specifically the terms regarding priority of interest set forth in section 2(e).

23.     After it became apparent that Rapid would not be making the Make Whole payments under the Participation Agreement, MetMC requested that Rapid provide MetMC and its agents with access to Rapid's books and records to determine whether any malfeasance occurred in the handling of the funds governed by the Participation Agreement.

24.     The Participation Agreement contains a clause entitled "Books and Records," which provides, in relevant part:

> Each party shall keep accurate books of account and records, in appropriate detail, covering all of its activities under this Agreement and all transactions relating to such activities and the expenses and receipts relating thereto. **Each of the Parties, on one (1) Business Days' notice given to the other, may during normal business hours examine such books and records of such other Party (whether maintained directly by such Party or by accountants or other service providers on behalf of such Party) for the purpose of verifying the accuracy of the Participated Merchant Advances, Collections and other payments made under this Agreement. The Party making any such inspection shall have full access to such books and records for such purposes and may make copies and extracts therefrom.**

Ex. A, §7(d)(i) (emphasis added).

25.     The Participation Agreement also contains a clause entitled "Further Assurances," which provides:

> The Parties shall cooperate fully with each other, and each Party shall perform such further acts, including executing and delivering to the other party such further instruments, documents and agreements, and **shall give such further written assurances, as may be reasonably requested by the other Parties** to better evidence and reflect the transactions described herein and contemplated hereby, or to carry into effect the intent and purposes of this Agreement.

Ex. A, § 24 (emphasis added).

26.     Pursuant to the above provision, on February 15, 2017, MetMC forwarded a record request to Rapid. A copy of the February 15, 2017 Correspondence is attached hereto as Exhibit "B" and is incorporated herein.

27.     The February 17, 2017 Correspondence set forth the scope of the records request as follows:

In summary, we would intend the scope of the review to include:

- Understanding of accounting systems and policies, and responsibilities of Rapid and NAB staff for books and records;

- Undertake reconciliation of cash receipts per bank statements from merchants for representative sample of advances in which MetMC participated including review of original documents and subsequent correspondence with merchant including CRM notes regarding merchant, bank records for all merchant payments made including via collections and/or during any refi's of merchants funded by MetMC;

- Review of refi policies and procedures;

- Review of monthly financials for Rapid including P&L, balance sheet and cash flow for October 2015-January 2017.

Exhibit B.

28.     On March 7-10, 2017, MetMC and/or their agent, the Durkin Group, visited Rapid's corporate headquarters at NAB's offices in Troy, Michigan for the purpose of reviewing Rapid's books and records.

29.     However, Rapid and NAB refused to allow MetMC access to certain books and records, all of which MetMC was entitled to review under the terms of the Participation Agreement and all of which were necessary to determine whether Rapid would be able to meet its obligations under the Participation Agreement.

30.     After this visit, MetMC notified Rapid that MetMC has "a deep and growing concern on behalf of [MetMC's] investors regarding the participations we invested in alongside Rapid." A copy of the April 3, 2017 Correspondence is attached hereto as Exhibit "C" and is incorporated herein.

31.     Specifically, MetMC informed Rapid of, among other things, "...NAB's unwillingness to provide access to certain books and records, access to which [MetMC] believe[s] is contemplated and allowed for in the participation agreement." *Id.* MetMC then requested that it again be given access to a list of books and records before its next visit, along with other information it is entitled to review.

32.     On April 7, 2017, Rapid responded to MetMC, stating, with little supporting information, that Rapid "believes that it has met its obligations to MetMC..." (*See* April 7, 2017 Letter, a true and correct copy of which is attached hereto as Exhibit "D".)

33.     To date, Rapid has not paid MetMC $1.6 million to which MetMC is entitled under the Participation Agreement. To the contrary, Rapid has indicated in no uncertain terms that it will not be making any Make Whole payments pursuant to the terms of the Participation Agreement.

34.     Rapid continues to refuse to allow MetMC to inspect Rapid's books and records.

35.     Rapid has also failed to provide further written assurances that it will turn over full amount of monies owed to MetMC in compliance with the terms of the Participation Agreement and, despite MetMC's reasonable request that it do so.

### Rapid Is the Alter-ego of NAB

36.     Rapid is a subsidiary of NAB. Upon information and belief, Rapid has been functioning as NAB's alter-ego.

7

37.     By way of example, upon information and belief, Rapid has been undercapitalized, inadequately funded and unable to pay its third-party lenders and creditors.

38.     Additionally, Rapid and NAB are both controlled by NAB's founder and Chief Executive Officer.

39.     Furthermore, Rapid keeps its books and records at NAB's corporate headquarters in Troy, Michigan.

40.     Upon information and belief, Rapid and NAB have engaged in commingling funds and other assets. Upon further information and belief, Rapid's commingling of funds includes preferential payments to NAB made with amounts due to MetMC and other creditors and/or owners.

41.     As a result of Rapid acting as NAB's alter-ego, NAB is directly liable for any and all obligations stemming from Rapid's breach of the Participation Agreement and/or other violations of law.

## COUNT ONE – BREACH OF CONTRACT
### (Against Rapid and NAB)

42.     Plaintiff incorporates the foregoing paragraphs as though stated herein.

43.     On October 5, 2015, MetMC and Rapid entered into a Participation Agreement.

44.     Pursuant to the Participation Agreement, Rapid was obligated to provide make-whole payments to MetMC to ensure that after twenty (20) months MetMC would receive at least an 18% IRR on its investments, currently amounting to an outstanding balance in excess of $1.6 million. Rapid was also required to allow MetMC access to its books and records at NAB's corporate headquarters. Rapid was also obligated to provide further written assurances that it would continue to perform under the Participation Agreement, in the event that MetMC reasonably requested such assurances. Ex. A, § 24.

8

45.     Rapid breached the Participation Agreement by communicating its unequivocal refusal to pay monies to which MetMC is entitled under the Participation Agreement, and by refusing to allow MetMC access to its books and records in violation of the Participation Agreement. Rapid further breached the Participation Agreement by failing to provide, in response to MetMC's reasonable requests for, further written assurances that Rapid would continue to perform under the Participation Agreement.

46.     As a result, MetMC suffered damages in the amount of roughly $1.6 million.

47.     As set forth more fully above, on information and belief, Rapid is and was at all relevant times an alter-ego of NAB.

48.     By virtue of operating as an alter-ego of one another, NAB is liable for any and all of Rapid's breaches of the Participation Agreement and/or any other violations of law.

**WHEREFORE,** Plaintiff MetMC respectfully requests that the Court enter a judgment against Defendants Rapid and NAB in Plaintiff's favor for damages in excess of $1.6 million, exclusive of interest and costs, for the reimbursement of monies owed to Plaintiff by Defendants, plus attorney's fees, prejudgment interest and such other relief as may be appropriate.

### COUNT TWO – CONVERSION
### (Against Rapid and NAB)

49.     Plaintiff incorporates the foregoing paragraphs as though stated herein.

50.     Pursuant to the Participation Agreement, Rapid is obligated to pay MetMC approximately $1.6 million. Rapid has explicitly communicated to MetMC that these payments will not be made.

51.     Rapid has intentionally, unlawfully and without justification refused to comply with its obligation to pay MetMC monies.

52.     Rapid continues to exercise dominion and control over these monies, and thus continues to deprive and interfere with MetMC's right to these monies.

53.     Upon information and belief, NAB has further interfered with MetMC's right to these monies by transferring them from Rapid's possession to that of NAB, without lawful justification or MetMC's consent.

54.     As set forth more fully above, on information and belief, Rapid is and was at all relevant times an alter-ego of NAB.

55.     As a result, Plaintiff suffered damages in the amount of roughly $1.6 million.

56.     As a further result Plaintiff has incurred and will continue to incur costs associated with prosecuting the current action, including attorney's fees.

**WHEREFORE,** Plaintiff MetMC respectfully requests that the Court enter a judgment against Defendants Rapid and NAB in Plaintiff's favor for damages in excess of $1.6 million, exclusive of interest and costs, for the reimbursement of monies owed to Plaintiff by Defendants, plus prejudgment interest, attorneys' fees and such other relief as may be appropriate.

## COUNT THREE – BREACH OF FIDUCIARY DUTIES
### (Against Rapid and NAB)

57.     Plaintiff incorporates the foregoing paragraphs as though stated herein.

58.     Rapid owed a fiduciary duty to all interested parties, including its duty to disclose Rapid's current or impending insolvency.

59.     Additionally, as Rapid's parent company and alter-ego, NAB had a fiduciary duty to disclose Rapid's current or impending insolvency to MetMC.

60.     Rapid and NAB breached their fiduciary duties to MetMC by failing to disclose Rapid's current or impending insolvency and likely inability to pay monies owed to MetMC.

61.     Additionally, NAB contributed to Rapid's insolvency by transferring monies to

10

which MetMC was entitled, from Rapid's possession and control to that of NAB.

62.       As set forth more fully above, on information and belief, Rapid is and was at all relevant times an alter-ego of NAB.

63.       As a result, MetMC suffered damages in the amount of roughly $1.6 million.

**WHEREFORE,** Plaintiff MetMC respectfully requests that the Court enter a judgment against Defendants Rapid and NAB in Plaintiff's favor for damages in excess of $1.6 million, exclusive of interest and costs, for the reimbursement of monies owed to Plaintiff by Defendants, plus attorneys' fees, prejudgment interest and such other relief as may be appropriate.

## COUNT FOUR – ACCOUNTING
### (Against Rapid and NAB)

64.       Plaintiff incorporates the foregoing paragraphs as though stated herein.

65.       MetMC does not have input and/or knowledge of either the day to day operations or administrative, sales, payroll, or accounting functions of Rapid and/or NAB.

66.       As explained more fully above, although MetMC visited NAB's corporate headquarters and reviewed certain information regarding Rapid, Rapid and NAB refused to allow MetMC to see certain books and records to which MetMC was entitled to review.

67.       As a result, MetMC does not have knowledge of or access to pertinent books and records of Rapid and/or NAB.

68.       By virtue of MetMC being refused by NAB and Rapid from the affairs of NAB and Rapid, and by NAB and Rapid's other improper conduct as aforesaid, MetMC is entitled to an accounting by NAB and Rapid monies which have been wasted, converted and lost by virtue of NAB and Rapid's misconduct, mismanagement and breach of obligations as aforesaid and as may be determined in discovery.

69.     NAB and Rapid are liable to MetMC for the value of such monies, as is shown by the accounting to have been so wasted, converted and lost by them.

70.     MetMC has no adequate remedy at law.

**WHEREFORE,** Plaintiff MetMC respectfully requests an accounting as aforesaid and the entry of judgment in favor of Plaintiff and against Defendants NAB and Rapid for the value of the monies which is shown by such accounting to have been wasted, converted and lost through their misconduct, mismanagement and breach of obligations as aforesaid.

### COUNT FIVE--TORTIOUS INTERFERENCE OF AN EXISTING CONTRACT
### (Metropolitan v. NAB)

71.     Plaintiff incorporates the foregoing paragraphs as though stated herein.

72.     The Participation Agreement was an enforceable contract between Metropolitan and Rapid.

73.     At all relevant times, NAB had knowledge of the Participation Agreement between Metropolitan and Rapid and its terms.

74.     On information and belief NAB intentionally induced Rapid to breach the terms of the Participation Agreement by distributing funds rightfully owed to Metropolitan to NAB.

75.     As a result of NAB's actions, Rapid did not have the necessary funds to pay MetMC the funds owed to MetMC and MetMC suffered damages in the amount of approximately $1.6 million.

**WHEREFORE,** Plaintiff MetMC respectfully requests that the Court enter a judgment against Defendant NAB in Plaintiff's favor for damages in excess of $1.6 million, exclusive of interest and costs, for the reimbursement of monies owed to Plaintiff by Defendants, plus attorneys' fees, prejudgment interest and such other relief as may be appropriate.

Respectfully submitted,

By: _____

Alan L. Frank, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road.
Jenkintown, PA 19046
P: (215) 935-1000
F: (215) 935-1110
Attorney for Plaintiff

Date: _5/8/17_

13